## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| In re:<br>I80 Equipment, LLC<br><br>        Debtor(s). | Case No. 17-81749<br><br>Chapter 7 |
| Jeana K. Reinbold, solely as Chapter 7<br>Trustee of the Estate of I80 Equipment,<br>LLC<br><br>        Plaintiff,<br><br>v.<br><br>Erik R. Jones<br><br>        Defendant | AP. No.  19- |

### COMPLAINT

Jeana K. Reinbold, solely as Chapter 7 Trustee of the Estate of I80 Equipment, LLC ("Plaintiff") for her Complaint against Erik R. Jones ("Defendant") states as follows:

### JURISDICTION AND VENUE

1.    This adversary proceeding arises under the above-captioned chapter 7 case, currently pending in this Court.

2.   This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. §§ 1334, 151, 157(a) and 157(b)(2)(A), (F), (H) and (O).  Plaintiff consents to entry of final orders or judgment by this Court.

3.   Venue is proper in this jurisdiction pursuant to 28 U.S.C. §1409(a).

## PARTIES

4.    Plaintiff is the duly appointed, qualified and serving chapter 7 trustee in the above referenced chapter 7 case.

5.    Defendant is an individual with an address of 17 Timber Ridge Rd., Coal Valley, IL  61240-9418 and/or 496 Briargate Drive, Colona, IL  61241.

## COMMON FACTS

6.   I80 Equipment, LLC ("Debtor") filed a chapter 7 bankruptcy petition herein on December 6, 2017.  Plaintiff was appointed chapter 7 trustee of the case on said date.

7.   Debtor was an Illinois limited liability company formed June 14, 2007 with its principal office at 120 Walnut Lane, Colona, IL  61241.  Debtor was involuntary dissolved on December 14, 2018.

8.   At all times relevant herein, Defendant (a) was the sole member of Debtor; (b) owned 100% of the membership interests in Debtor; and (c) was the sole manager of Debtor.

9.   Prior to filing bankruptcy, the Debtor operated a commercial business whereby it purchased and refurbished bucket trucks for resale.

10.   Jones Lease Properties, LLC ("Jones Lease") is an Illinois limited liability company formed January 21, 2004 with its principal office at 496 Briargate Dr., Colona, IL  61241.

11.   Jones Lease operates a rental/management company providing single-family and multi-family rental options in the Quad Cities area.

2

12.  At all times relevant herein, Defendant (a) was the sole member of Jones Lease; (b) owned 100% of the membership interests in Jones Lease; and (c) was the sole manager of Jones Lease.

13.  J.P. Rentals, LLC ("JP Rentals") is an Illinois limited liability company formed March 13, 2008 with its principal office at 20490 E. 550th St., Colona, IL 61241.

14.  JP Rentals was formed to offer rental options in larger commercial multi-unit properties.

15.  At all times relevant herein, Defendant (a) was the sole member of JP Rentals; (b) owned 100% of the membership interests in JP Rentals; and (c) was the sole manager of JP Rentals.

16.  Jones Holdings, LLC ("Jones Holdings") is an Illinois limited liability company formed October 22, 2008 with its principal office at 120 Walnut Lane, Colona, IL  61241.

17.  At all times relevant herein, Defendant (a) was the sole member of Jones Holdings; (b) owned 100% of the membership interests in Jones Holdings; and (c) was the sole manager of Jones Holdings.

18.  Pyramid Systems, L.L.C. ("Pyramid Systems") was an Iowa limited liability company formed July 11, 2017 with its principal office at 20490 E. 550th St., P.O. Box 134, Colona, IL  61241.  Pyramid Systems was administratively dissolved on August 9, 2019.

19.  At all times relevant herein, Defendant (a) was the sole member of Pyramid

3

Systems; (b) owned 100% of the membership interests in Pyramid Systems; and (c) was the sole manager of Pyramid Systems.

20.  From on or about January 1, 2015 through November 28, 2017, the Debtor (a) made transfers of its funds; (b) granted credits against indebtedness; and (c) incurred indebtedness to or for the benefit of Jones Lease in the total amount of $5,869,341.90, as follows:

a.  $5,419,440.62 of said transfers are set forth in the Debtor's register entitled "DUE FROM JONES LEASE PROPERTIES, LLC";

b.  $135,460.16 of said transfers were by checks and one debit to or for the benefit of Jones Lease out of Debtor's checking account ending in 7863 at Blackhawk Bank & Trust ("Black Hawk")l

c.  $759,599.30 of said transfers were for rent owing on properties commonly known as 20490 E. 550th Street, 20160 E. 550th Street Rear and 120 Walnut Ln., Colona, IL ("Leased Properties") which I80 was leasing from Jones Lease and were made by (a) checks to or for the benefit of Jones Lease out of I80's said checking account at Blackhawk Bank or said checking account at First Midwest Bank; or (b) credits granted to Jones Lease against debt owed by it to I80.  However, as Jones Lease and JP Rentals were also utilizing the property, one-third (1/3) of said transfers were to or for the benefit of Jones Lease:

| | | |
|---|---|---|
| (1) Base rent | $ | 624,000.00 |
| (2) MidAmerican Energy | $ | 121,206.50 |
| (3) City of Colona | $ | 3,526.76 |
| (4) County Waste System | $ | 1,598.40 |
| (5) Mediacom | $ | 9,267.64 |

| Total | $ 759,599.30 |
|---|---|
| One-third (1/3) = | $ 253,199.77 |

d.  The obligation incurred by the Debtor to pay one-third (1/3) of all amounts due under the 2017 lease of the Leased Properties was for the benefit of Jones Lease. Further, as of the date of bankruptcy, one-third (1/3) of the December, 2017 rent due under said lease, or $9,391.35, was unpaid.

e.  $50,000.00 was transferred to US Bank by debit out of the said Black Hawk account in payment of amounts owing by Jones Lease on credit card ending in 2730;

f.  $1,850.00 was transferred by checks written out of said FMB account.

21.  From on or about January 1, 2015 through November 27, 2017, the Debtor (a) made transfers of its funds; (b) granted credits against indebtedness; and (c) incurred indebtedness to or for the benefit of JP Rentals in the total amount of $2,140,283.21, as follows:

a.  $1,658,973.60 of said transfers are set forth in the Debtor's register entitled "JP RENTALS SHORT TERM" between January 1, 2015 and November 27, 2017'

b.   $194,000.00 of said transfers were by debits out of the Debtor's checking account ending in 4865 at First Midwest Bank totaling $189,000.00 and a cashier's check for $5,000.00 drawn by Blackhawk Bank & Trust, the source of which was Debtor's funds in account ending in 7863 at said Bank.

c.  $759,599.30 of said transfers were for rent owing on properties commonly known as 20490 E. 550th Street, 20160 E. 550th Street Rear and 120 Walnut Ln.,

5

Colona, IL ("Leased Properties") which I80 was leasing from Jones Lease and were made by (a) checks to or for the benefit of Jones Lease out of I80's said checking account at Blackhawk Bank or said checking account at First Midwest Bank; or (b) credits granted to Jones Lease against debt owed by it to I80. However, as Jones Lease and JP Rentals were also utilizing the property, one-third (1/3) of said transfers were to or for the benefit of JP Rentals:

| | | |
|---|---|---:|
| (1) | Base rent | $ 624,000.00 |
| (2) | MidAmerican Energy | $ 121,206.50 |
| (3) | City of Colona | $ 3,526.76 |
| (4) | County Waste System | $ 1,598.40 |
| (5) | Mediacom | $ 9,267.64 |
| | Total | $ 759,599.30 |
| | One-third (1/3) = | $ 253,199.77 |

d. The obligation incurred by the Debtor to pay one-third (1/3) of all amounts due under the 2017 lease of the Leased Properties was for the benefit of JP Rentals. Further, as of the date of bankruptcy, one-third (1/3) of the December, 2017 rent due under said lease, or $9,391.35, was unpaid.

e. $10,000.00 was transferred to US Bank on or about 11/21/17 by debit out of said Blackhawk Bank account in payment of amounts owing by JP Rentals on credit card ending in 8847.

f. $14,718.49 was transferred to The Sherwin Williams Company on or about 12/1/17 for the benefit of JP Rentals using a debit card issued by Bento Technologies, Inc.

6

22. From on or about January 1, 2015 through November 15, 2017, the Debtor transferred $180,315.46 of its funds to or for the benefit of Jones Holdings, as and for airplane expenses, as follows:

a. $75,020.85 of said transfers were made by credit card issued by First Midwest Bank ("FMB") or U.S. Bank;

b. $105,294.61 of said transfers were made by check, debit or wire on checking account ending in 4865 at FMB or account ending in 7863 at Blackhawk Bank & Trust;

23. From on or about July 14, 2015 and November 13, 2017, the Debtor transferred $8,324.79 of its funds to or for the benefit of Jones Holdings, as follows:

a. $3,324.79 of said transfers were made to MidAmerican Energy Company;

b. $5,000.00 of said transfers were made to Lemeur Grant.

24. From on or about December 6, 2015 through November 22, 2017, Debtor transferred $283,463.84 of its funds to or for the benefit of Defendant as "Members Draws".

25. From on or about November 15, 2017 through December 1, 2017, Debtor transferred $5,005.42 of its funds to or for the benefit of Defendant using a debit card issued by Bento Technologies, Inc.

26. Per Debtor's Statement of Financial Affairs filed herein on December 19, 2017, in Spring, 2017 Debtor transferred approximately $90,000.00 to Defendant in payment of his personal tax liabilities ((Court Doc. 35, par. 30.1).

27.  From on or about July 6, 2015 through November 24, 2017, Debtor transferred $73,957.16 of its funds to or for the benefit of the following entities:

| | |
|---|---|
| Pekin Life Insurance | $   4,648.71 |
| Chase Bank | $ 28,418.19 |
| Genesis Medical Center | $ 15,890.26 |
| Grant Lemeur | $ 25,000.00 |
| | |
| Total: | $  73,957.16 |

28.  Within one (1) year of bankruptcy, Debtor transferred $12,006,227.74 of its funds to or for the benefit of FMB; $10,442,009.57 of said transfers are detailed on attached Exhibit "A".  In addition, Debtor made the following such transfers by check or by debit out of its said account at FMB:

| Date | Check No. or Debit | Amount |
|---|---|---|
| 12/28/16 | 351154 | $   1,988.00 |
| 12/28/16 | Debit | $ 34,639.68 |
| 1/17/17 | Debit | $ 25,000.00 |
| 1/30/17 | Debit | $ 32,289.33 |
| 2/24/17 | 351819 | $      900.00 |
| 2/27/17 | Debit | $ 15,000.00 |
| 2/28/17 | Debit | $ 26,590.36 |
| 3/28/17 | Debit | $ 31,769.17 |
| 4/28/17 | Debit | $ 34,762.03 |
| 5/12/17 | Debit | $   1,120.08 |
| 5/30/17 | Debit | $ 35,165.56 |
| 6/28/17 | Debit | $ 34,697.47 |
| 7/28/17 | Debit | $ 55,918.15 |
| 8/22/17 | Debit | $   1,118.96 |
| 8/30/17 | Debit | $ 35,630.75 |
| | | |
| Total: | | $366,589.54 |

In addition, Debtor made the following such transfers by cashier's checks written by Blackhawk Bank, the source of which checks were

Debtor's funds:

| Date | Check No. | Amount |
|------|-----------|--------|
| 9/13/17 | 561876 | $ 68,516.43 |
| 9/18/17 | 561890 | $ 82,448.32 |
| 9/22/17 | 561913 | $ 149,941.30 |
| 9/27/17 | 561928 | $ 219,577.42 |
| 10/3/17 | 561945 | $ 89,078.88 |
| 10/12/17 | 561968 | $ 82,270.48 |
| 10/17/17 | 561986 | $ 93,320.88 |
| 10/23/17 | 562001 | $ 67,662.32 |
| 11/1/17 | 562043 | $ 90,397.80 |
| 11/10/17 | 562068 | $ 219,414.80 |
| 11/21/17 | 563492 | $ 35,000.00 |
| Total | | $1,197,628.63 |

29.  Within one (1) year of bankruptcy, Debtor transferred $1,838,140.45 of its funds to or for the benefit of U.S. Bank, N.A. ("US Bank").  $1,549,195.45 of said transfers were made by wire out of  Debtor's said account at FMB and are detailed on attached Group Exhibit "B".  In addition, Debtor made the following such transfers by wire out of its said account at Blackhawk Bank:

| Date | Amount |
|------|--------|
| 9/27/17 | $ 50,000.00 |
| 10/13/17 | $100,000.00 |
| 10/25/17 | $138,945.00 |
| Total: | $288,945.00 |

30.  On or about the following dates, $19,094.50 of this Estate's funds were transferred to Defendant using a debit card issued by Bento Technologies, Inc

| Date | Amount |
|------|--------|
| 12/8/17 | $18,613.50 |
| 1/10/18 | $     481.00 |
| Total: | $19,094.50 |

## COUNT I
### (Breach of Fiduciary Duty under Illinois Law)

31.  Plaintiff repeats and realleges averments 1 through 30 of her Complaint as if set forth fully herein.

32.  This Count is brought pursuant to 11 U.S.C. §§ 541(a)(1) and 544, section 15-3 of the Illinois Limited Liability Company Act (805 ILCS 180/15-3) as effective prior to and as of July 1, 2017 and Illinois common law.

33.  Defendant, as the sole Member and Manager of Debtor, had complete control over Debtor and its financial and business operations.

34.  Defendant, as the sole Member and Manager of Debtor, owed fiduciary duties to Debtor and, upon its insolvency, to Debtor's creditors as well, including fiduciary duties of loyalty, due care, good faith and fair dealing.

35.  Defendant's fiduciary duties required him to manage Debtor's financial and business affairs with honesty, due diligence, loyalty and good faith, and to exercise the degree of care that prudent persons, prompted by self-interest, would exercise in the management of their own affairs.

36.  Defendant caused Debtor to make each of the transfers set forth in paragraphs 20-27 ("Fraudulent Transfers") and to assume the obligation to pay two-thirds (2/3) of the December Rent, amounting to $18,782.70, for the benefit of Jones

10

Lease and JP Rentals.

37.  Debtor received no consideration, value or benefit whatsoever in return for making each of the Fraudulent Transfers and for assuming the said obligation.

38.  Many of the Fraudulent Transfers and the assumption of said obligation were to or for the benefit of insiders of the Debtor, i.e., either Defendant or companies 100% owned and controlled by Defendant.

39.  Jones Lease and JP Rentals were not even in the same business as Debtor; there was no possible valid business purpose in making a single transfer of the Debtor's funds or incurring a single debt to or for the benefit of said entities.

40.  Except for Member Draws, the Fraudulent Transfers were concealed from creditors; they were either recorded on the Debtor's books as legitimate expenses or as loans, which they were neither.

41.  In causing Debtor to make each of the Fraudulent Transfers and to incur said indebtedness, Defendant breached his aforesaid fiduciary duties owed to Debtor and, upon its insolvency, to Debtor's creditors as well.

42.  In causing Debtor to make each of the Fraudulent Transfers and to incur said indebtedness, Defendant conducted Debtor's affairs for the benefit of himself and his other companies, and not for the benefit of Debtor and, upon its insolvency, Debtor's creditors as well.

43.  In causing Debtor to make each of the Fraudulent Transfers and to incur said indebtedness, Defendant wasted Debtor's assets.

44.  In causing the Debtor to make each of the Fraudulent Transfers and to

incur said indebtedness, Defendant engaged in grossly negligent or reckless conduct, intentional misconduct and/or in conduct which Defendant knew to be in violation of law.

45.   As a direct and proximate result of Defendant's aforesaid said breaches, the Debtor and its creditors suffered damages of not less than $8,642,691.78.

46.  Defendant's conduct was extreme and outrageous, justifying the imposition of punitive damages.

WHEREFORE, Plaintiff prays that this Court:

(a) enter judgment in favor of Plaintiff and against Defendant for a sum no less than $8,642,691.78 plus punitive damages, costs and prejudgment interest; and

(b) grant Plaintiff such other relief as is just.

## COUNT II
### (Conversion)

47.  Plaintiff repeats and realleges averments 1-46 as if set forth fully herein.

48.  This count is brought pursuant to 541(a)(1), 544 and Illinois common law.

49.  Defendant assumed control and dominion over said $8,623,989.08 in Fraudulent Transfers wrongfully and without authority.

50.  Plaintiff has a right to immediate possession of said $8,623,989.08, absolutely and without condition.

51.  Plaintiff hereby makes demand for possession of said $8,623,989.08.

52.  Defendant's conduct was extreme and outrageous, justifying the imposition of punitive damages.

WHEREFORE, Plaintiff prays that this Court:

(a) enter judgment in favor of Plaintiff and against Defendant for $8,623,989.08 plus punitive damages, costs and prejudgment interest; and

(b) grant Plaintiff such other relief as is just and equitable.

### COUNT III
### (Unjust Enrichment)

53.  Plaintiff repeats and realleges averments 1-52 as if set forth fully herein.

54.  This count is brought pursuant to 541(a)(1), 544 and Illinois common law.

55.  Defendant was enriched and Debtor was impoverished as a result of Defendant's numerous breaches of his fiduciary duties and acts of conversion.

56.  It would be unjust and unconscionable to permit Defendant to retain the benefit of the funds which were the subject of the Fraudulent Transfers and of Debtor's assumption of the debt for two-thirds (2/3) of the December rent owing on the Leased Properties.

57.  Defendant's conduct was extreme and outrageous, justifying the imposition of punitive damages.

WHEREFORE, Plaintiff prays that this Court:

(a)  enter a judgment in favor of Plaintiff and against Defendant for a sum no less than $8,642,691.78, plus punitive damages, costs and prejudgment interest; and

(b) grant Plaintiff such other relief as is just.

## COUNT IV
## (11 U.S.C. § 548(a)(1)(A)-Actual Fraud)

58.  Plaintiff repeats and realleges averments 1-57 of her Complaint as if set forth fully herein.

59.  This Count is brought pursuant to 11 U.S.C. §§ 548(a)(1)(A), 550(a)(1) and 551.

60.  Upon information and belief, as to the Fraudulent Transfers set forth in paragraphs 24-26, and as to those set forth in paragraph 22 which were made within two (2) years of bankruptcy, the Debtor made the transfers with actual intent to hinder, delay or defraud any entity to which Debtor was or became, on or after the date that such transfer was made, indebted, as demonstrated by, including but not limited to, the following facts which constitute badges of fraud:

(a)     There was a close relationship between the entities for whose benefit the Fraudulent Transfers were made and the Debtor, as Jones was the sole member of all entities, and all entities were controlled and directed by Jones.

(b)     The consideration received by the Debtor for the Fraudulent Transfers was inadequate, as the Fraudulent Transfers were wholly made for the benefit of Jones and his other entities, and not the Debtor.

(c)     The Debtor was insolvent or became insolvent shortly after the Fraudulent Transfers were made or the Fraudulent Obligations were incurred.

(d)     Jones retained indirect control over all the properties into which

materials purchased from the Defendant were incorporated after the Fraudulent Transfers, as such properties were owned by Jones Lease and JP Rentals which Jones controlled.

(e)     Jones' pattern of recklessly using the Debtor's funds to purchase non-Debtor and luxury items for his other entities and his own personal use after the Debtor had incurred substantial debt.

(f)     In making the Fraudulent Transfers to or for the benefit of his other entities, Jones engaged in conscious misbehavior and recklessness. No legitimate business purpose of the Debtor was served by making any of the Fraudulent Transfers. The only purpose of said transfers were to further the real estate business of Jones' other entities.

(g)     The Fraudulent Transfers to Jones Lease and JP Rentals were concealed, as they were recorded in the Debtor's books, not as gifts, but as accounts receivable. Said entities had no obligation to repay the Fraudulent Transfers to the Debtor.

(collectively, "Badges of Fraud").

61.   Upon information and belief, any obligation(s) incurred within two (2) years of bankruptcy by the Debtor for the benefit of Defendant ("Fraudulent Obligations") were incurred with actual intent to hinder, delay or defraud any entity to which Debtor was or became, on or after the date that such transfer was made, indebted, as demonstrated by, including but not limited to, the above Badges of Fraud.

62.   Defendant's conduct was extreme and outrageous, justifying the

imposition of punitive damages.

WHEREFORE, Plaintiff prays that this Court:

(a)  avoid the said Fraudulent Transfers;

(b) avoid the Fraudulent Obligations;

(c) enter judgment in favor of Plaintiff and against Defendant for $532,562.51

plus punitive damages, costs and prejudgment interest;

(d)  preserve said transfers for the benefit of this Estate; and

(e) grant Plaintiff such other relief as is just and equitable.

## COUNT V
### (11 U.S.C. §548(a)(1)(B)-Constructive Fraud)

63.  Plaintiff repeats and realleges averments 1-62 as if set forth fully herein.

64.  This count is brought pursuant to 11 U.S.C. §§ 548(a)(1)(B),550 (a)(1) and

551.

65.  As to the Fraudulent Transfers set forth in paragraphs 24-26 and as to

those set forth in paragraph 22 which were made within two (2) years of bankruptcy,

and as to the Fraudulent Obligations, Debtor received less than a reasonably

equivalent value in exchange for such transfers and such obligations and upon

information and belief: (1) was insolvent on the dates that such transfers were made

and such obligations were incurred, or became insolvent as a result of such transfers

and obligations; (2) was engaged in business or a transaction, or was about to engage

in business or a transaction, for which any property remaining with Debtor was an

unreasonably small capital; or (3) intended to incur, or believed that Debtor would

incur, debts that would be beyond Debtor's ability to pay as such debts matured.

WHEREFORE, Plaintiff prays that this Court:

(a)  avoid the said Fraudulent Transfers;

(b) avoid the Fraudulent Obligations;

(c)  enter judgment in favor of Plaintiff and against Defendant for $532,562.51

plus court costs and prejudgment interest;

(d)  preserve said transfers for the benefit of this Estate; and

(e)  grant Plaintiff such other relief as is just and equitable.

## COUNT VI
### (805 ILCS §§ 25-30 and 25-35 of the Illinois Limited Liability Act)

66.  Plaintiff repeats and realleges averments 1-65 as if set forth fully herein.

67.  This Count is brought pursuant to Section 541(a)(1) and Sections 25-30
and 25-35 of the Illinois Limited Liability Act (805 ILCS §§ 25-30 and 25-35), as in
effect prior to and as of July 1, 2017.

68.  As to the Fraudulent Transfers set forth in paragraphs 24-26, and as to
those set forth in paragraph 22 which were made within two (2) years of bankruptcy,
at the time said transfers were made, upon information and belief, Debtor was not
able to pay its debts as they became due in the ordinary course of business; or the
Debtor's total assets were less than the sum of its total liabilities.

69.  Defendant voted for, assented and consented to, and had knowledge that
the entire amount of said Fraudulent Transfers made by Debtor to or for the benefit
of Defendant violated Section 25-30 of the Illinois Limited Liability Act (805 ILCS §

25-30), as in effect prior to and as of July 1, 2017.

70.   In voting for, assenting and consenting to said Fraudulent Transfers, Defendant failed to comply with Section 15-3 of the Illinois Limited Liability Act (805 ILCS § 15-3), as in effect prior to and as of July 1, 2017.

71.   Defendant's conduct was extreme and outrageous, justifying the imposition of punitive damages.

WHEREFORE, Plaintiff prays that this Court:

(a)   enter judgment in favor of Plaintiff and against Defendant for $532,562.51 plus punitive damages, court costs and prejudgment interest; and

(b) grant Plaintiff such other relief as is just.

## COUNT VII
### (Constructive and/or Resulting Trust)

72.   Plaintiff repeats and realleges averments 1-71 as if set forth fully herein.

73.   This Count is brought pursuant to 541(a)(1), 544 and Illinois common law.

74.   If Plaintiff's above legal remedies are inadequate, Plaintiff is entitled to restitution and a declaration that property held by the Defendant having a value of up to the amount of Plaintiff's damages is held in a constructive and/or resulting trust for the benefit of Plaintiff.

WHEREFORE, Plaintiff prays that this Court:

(a)   declaration that Defendant holds property having a value of up to the amount of Plaintiff's damages is held in a constructive and/or resulting trust for the benefit of Plaintiff; and

18

(b)  grant Plaintiff such other relief as is just.

## COUNT VIII
### (11 U.S.C. § 549-Post Petition Transfers)

75.  Plaintiff repeats and realleges paragraphs 1-74 as if fully set forth herein.

76.  This Count is brought pursuant to 11 U.S.C. §§ 549, 550(a)(1) and 551.

77.  The transfers of $19,094.50 set forth in paragraph 30 were not authorized under the Bankruptcy Code or by this Court.

WHEREFORE Plaintiff prays that this Court:

a.  avoid the said transfers of $19,094.50;

b.  enter judgment in favor of Plaintiff and against Defendant for the sum of $19,094.50 plus costs of $350.00, plus prejudgment interest;

c.  preserve the said transfers for the benefit of this Estate; and

d.  grant the Plaintiff such other relief as is just.

## COUNT IX
### (11 U.S.C. § 547-Insider Preference-FMB)

78.  Plaintiff repeats and realleges paragraphs 1-77 as if fully set forth herein.

79.  The transfers set forth in paragraph 28 were to or for the benefit of a creditor for or on account of an antecedent debt(s) owed by Debtor before such transfers were made.

80.  Defendant guaranteed the debt owed by Debtor to FMB on account of which said transfers were made.

81.  The above transfers were made while Debtor was insolvent.

82.  The above transfers enabled Defendant to receive more than Defendant

would receive if the transfers had not been made and Defendant received payment of such debt(s) to the extent provided by the provisions of Title 11.

83.  Defendant was an insider of Debtor at the time of said transfers.

WHEREFORE Plaintiff prays that this Court:

a.  avoid the said transfers of $12,006,227.74;

b.  enter judgment in favor of Plaintiff and against Defendant for the sum of $12,006,227.74 plus costs of $350.00, plus prejudgment interest;

c.  preserve the said transfers for the benefit of this estate; and

d.  grant Plaintiff such other relief as is just.

## COUNT X
### (11 U.S.C. § 547-Insider Preference-US Bank)

84.  Plaintiff repeats and realleges paragraphs 1-83 as if fully set forth herein.

85.  The transfers set forth in paragraph 29 were to or for the benefit of a creditor for or on account of an antecedent debt(s) owed by Debtor before such transfers were made.

86.  Defendant guaranteed or cosigned the debt owed by Debtor to US Bank on account of which said transfers were made.

87.  The above transfers were made while Debtor was insolvent.

88.  The above transfers enabled Defendant to receive more than Defendant would receive if the transfers had not been made and Defendant received payment of such debt(s) to the extent provided by the provisions of Title 11.

89.  Defendant was an insider of Debtor at the time of said transfers.

WHEREFORE Plaintiff prays that this Court:

a.  avoid the said transfers of $1,838,140.45;

b.  enter judgment in favor of Plaintiff and against Defendant for the sum of

$1,838,140.45 plus costs of $350.00, plus prejudgment interest;

c.  preserve the said transfers for the benefit of this estate; and

d.  grant Plaintiff such other relief as is just.

Jeana K. Reinbold, solely as Chapter 7
Trustee of the Estate of I80 Equipment,
LLC

By: /s/ Andrew W. Covey
One of her attorneys
Andrew W. Covey #06183817
416 Main Street, Suite 700
Commerce Bank Building
Peoria, IL 61602
Tel: 309-674-8125
Email: acovey1@hotmail.com

By:/s/ Jeana K. Reinbold
One of her attorneys
Jeana K. Reinbold #6272531
1100 S. 5th Street
P.O. Box 7315
Springfield, IL 62791-7315
Tel: 217-241-5629
Email: jeana@jeanareinboldlaw.com